UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| AARON OSORNO-HERNANDEZ, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:13 CV 417 RWS |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM AND ORDER**

This matter is before me on the motion of Aaron Osorno-Hernandez under 28 U.S.C. § 2255 to vacate, set aside, or correct a sentence by a person in federal custody. In his motion Osorno-Hernandez alleges that his Sixth Amendment right to the effective assistance of counsel was violated. For the reasons set forth below, I will deny Osorno-Hernandez's motion.

**I.     BACKGROUND**

On October 13, 2011, Osorno-Hernandez was indicted on three separate counts. Count I charged Osorno-Hernandez with knowingly and intentionally distributing a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1). Count II also charged Osorno-Hernandez with knowingly and intentionally distributing a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1). Count III charged Osorno-Hernandez with knowingly and intentionally possessing with the intent to distribute a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1).

The three counts were a direct result of an investigation conducted by the FBI. During the investigation, Osorno-Hernandez orchestrated a series of transactions in which he sold or

planned to sell methamphetamine to a confidential source of the FBI. On these occasions, Osorno-Hernandez's was also in possession of the substance. The following facts are established by Osorno-Hernandez's plea agreement entered in the underlying criminal case: Osorno-Hernandez first alerted the confidential source of his possession and intent to sell the methamphetamine on August 11, 2011. On August 16, 2011, Osorno-Hernandez met with two of the FBI's confidential sources and supplied them with 1.65 grams of methamphetamine, the composition of which was confirmed as methamphetamine by the St. Louis Metropolitan Police Department after laboratory analysis. United States v. Osorno-Hernandez, 4:11 CR 425 RWS 1 [Doc. # 39, Plea Agr., pp. 3-4].

On August 24, 2011, the FBI's confidential sources again met with Osorno-Hernandez while under surveillance and in possession of a recording device. The source purchased 226 grams of methamphetamine in exchange for $8,500. Once again, the substance tested positive for methamphetamine after a laboratory analysis by the St. Louis Metropolitan Police Department. On October 4, 2011, a date designated by Osorno-Hernandez in a prior phone call with a confidential source, Osorno-Hernandez was taken into custody by a task force at the location he was to meet the confidential source. The task force found 160 grams of methamphetamine on Osorno-Hernandez's person as a result of a pat-down search. The composition of the drug was confirmed as methamphetamine by a field test conducted by the task force. In a post-Miranda statement, Osorno-Hernandez admitted to owning the methamphetamine and admitted to his intent to sell it. Id.

On October 17, 2011, Osorno-Hernandez pled not guilty to all three counts of the indictment. At his change of plea hearing on February 2, 2012, Osorno-Hernandez pled guilty to Count 2 pursuant to a plea agreement. In the plea agreement, Osorno-Hernandez waived the right

to appeal all non-jurisdictional, non-sentencing issues. Osorno-Hernandez also waived his right to appeal all sentencing issues other than Criminal History in the event that he received a sentence within or below the accepted guideline range.

A presentence report ("PSR") was prepared which determined Osorno-Hernandez's total offense level to be 25. He was assigned a criminal history category of I, and his United States Sentencing Guidelines range was calculated to be 57-71 months incarceration. The PSR also determined that Count 2 mandated a term of supervised release of 2-5 years based on Osorno-Hernandez's qualification under the United States Sentencing Guidelines §5C1.2. The PSR further contained a section noting that no factors were identified that would warrant a variance and imposition of a non-guideline sentence.

No objections were filed concerning the PSR, and defense counsel affirmed his prior review of the PSR with Osorno-Hernandez at the sentencing hearing on May 2, 2013. Defense counsel also did not make any departure motions during the sentencing hearing. Immediately thereafter, when I gave Osorno-Hernandez the opportunity to speak for himself, he took full responsibility for his actions. At the conclusion of the hearing, I sentenced Osorno-Hernandez to a term of 57 months imprisonment, a term at the bottom of the guideline range, and a two-year supervised release upon release from imprisonment.

## II.  GROUNDS FOR RELIEF

Osorno-Hernandez's section 2255 motion alleges the following ineffective assistance of counsel claims:

> 1) Failure to advise Osorno-Hernandez of the "consequences of accepting the plea with regards to his waiver of appeal rights or of any other motion attacking his conviction or sentence[;]"

3

2) Failure to advise Osorno-Hernandez "of all of the evidence the government was require [*sic*] to present the district court if, He [*sic*] so choose [*sic*] to proceed to trial[;]"

3) Misleading Osorno-Hernandez by telling him he would receive a downward departure based upon the lack of a fast-track program within the Eastern District of Missouri;

4) Failure to file an appeal upon instruction by Osorno-Hernandez.

## III. ANALYSIS

### A. *Ineffective Assistance of Counsel Claims*

All of Osorno-Hernandez's claims are ineffective assistance of counsel claims. The Sixth Amendment establishes the right of the criminally accused to the effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). To state a claim for ineffective assistance of counsel, Osorno-Hernandez must prove two elements of the claim. First, he "must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. In considering whether this showing has been accomplished, "judicial scrutiny of counsel's performance must be highly deferential." Id. at 689. The courts seek to "eliminate the distorting effects of hindsight" by examining counsel's performance from counsel's perspective at the time of the alleged error. Id. Second, Osorno-Hernandez "must show that the deficient performance prejudiced the defense." Id. at 687. This requires him to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. The court need not address both components if the petitioner makes an insufficient showing on one of the prongs. Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995).

In the context of guilty pleas, a petitioner must show that "there is a reasonable

probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Matthews v. United States, 114 F.3d 112, 114 (8th Cir. 1997). The test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Hill, 474 U.S. at 56.

Osorno-Hernandez's ineffective assistance of counsel claims must be evaluated in light of the fact that he entered a guilty plea in the underlying criminal case. "While a guilty plea taken in open court is not invulnerable to collateral attack in a post conviction proceeding, the defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings." Nguyen v. United States, 114 F.3d 699, 703 (8th Cir. 1997) (internal citations omitted). In the underlying criminal case, Osorno-Hernandez pled guilty at his change of plea hearing and admitted the facts in the plea agreement were true, as follows:

> JUDGE: Do you understand that by pleading guilty you're waiving your right against self-incrimination?
>
> OSORNO-HERNANDEZ: Yes.
>
> JUDGE: Because I will ask you if you did what they say you did. Do you understand that?
>
> OSORNO-HERNANDEZ: Uh-huh, yes.
>
> JUDGE: Having discussed your rights with you, sir, is it still your decision to plead guilty?
>
> OSORNO-HERNANDEZ: Yes.
>
> . . .

> JUDGE: Did you read this document [plea agreement] before you signed it?
>
> OSORNO-HERNANDEZ: Yes.
>
> JUDGE: Did you go over it with your attorney?
>
> OSORNO-HERNANDEZ: Yes.
>
> JUDGE: Did he answer all your questions?
>
> OSORNO-HERNANDEZ: Yes, Your Honor.
>
> JUDGE: Do you believe you understand what's in this document?
>
> OSORNO-HERNANDEZ: Yes.
>
> JUDGE: Is everything in here true?
>
> OSORNO-HERNANDEZ: Yes.

United States v. Osorno-Hernandez, 4:11 CR 425 RWS [Doc. # 56, Plea Tr., pp. 10-11].

Osorno-Hernandez also took full responsibility for his actions at his sentencing hearing, as follows:

> OSORNO-HERNANDEZ: Your Honor, all I want to state is I take full responsibility for my actions. Now that I'm going to be detached from my family, I'll have to start all over from scratch. It's going to be pretty hard for me to do that because the term that I'll be incarcerated is five years, so like I said, I take full responsibility for everything that I did.

United States v. Osorno Hernandez, 4:11 CR 425 RWS [Doc. # 53, Sent. Tr., pp. 4].

At the change of plea hearing in the underlying criminal case, Osorno-Hernandez expressed complete satisfaction with his defense counsel's representation of him in open court, as follows:

> JUDGE: Have you had enough time to discuss your case with your attorney?
>
> OSORNO-HERNANDEZ: Yes.

> JUDGE: Are you satisfied with his representation of you in this case?
>
> OSORNO-HERNANDEZ: Yes.
>
> JUDGE: Is there anything you think your attorney should have done but did not do in representing you?
>
> OSORNO-HERNANDEZ: No.

<u>United States v. Osorno-Hernandez</u>, 4:11 CR 425 RWS [Doc. # 56, Plea Tr., pp. 8].

In Ground 1, Osorno-Hernandez claims defense counsel failed to advise him of the consequences of accepting the plea with regards to his waiver of appeal rights or of any other motion attacking his conviction or sentence. I advised Osorno-Hernandez of the aforementioned consequences in open court at the change of plea hearing, and he acknowledged his understanding of them:

> JUDGE: Now, once that guideline range is determined under the chart, you've agreed not to ask for a sentence that's outside the guideline range. You understand that?
>
> OSORNO-HERNANDEZ: Yes.
>
> JUDGE: You understand what's in the plea agreement these are recommendations to me. I'm not required to follow what's in the plea agreement.
>
> OSORNO-HERNANDEZ: Yes.
>
> JUDGE: But if I sentence you consistent with the plea agreement, you've agreed not to appeal the sentence. Do you understand that?
>
> OSORNO-HERNANDEZ: Yes.
>
> JUDGE: If I sentence you consistent with the plea agreement, you've agreed not to file any other motions or any other lawsuits challenging how your case has been handled

except for a claim you may have for misconduct by the prosecutor or ineffective assistance by your lawyer. Do you understand that?

OSORNO-HERNANDEZ: Yes.

[Id. at pp. 13]. Because Osorno-Hernandez understood the consequences of pleading guilty, he is unable to show that he was prejudiced by his counsel's allegedly deficient assistance. As a result, Ground 1 will be denied.

In Ground 2, Osorno-Hernandez claims defense counsel failed to advise him of the volume of evidence the government would have needed to proceed to trial. At the plea hearing, I advised Osorno-Hernandez of the amount of evidence the government would have been required to present had he elected to go to trial, and he acknowledged this information as follows:

JUDGE: You understand that at a trial you're presumed innocent; you don't have to prove anything; the burden of proof is on United States Attorney to prove you guilty by competent evidence and beyond a reasonable doubt?

OSORNO-HERNANDEZ: Yes.

JUDGE: You understand that at a trial the United States Attorney would have to bring their witnesses into this courtroom, those witnesses would have to testify in your presence, your attorney could cross-examine those witnesses, object to the evidence, and could call witnesses and offer evidence on your behalf?

OSORNO-HERNANDEZ: Yes.

. . .

JUDGE: Now, for you to have been found guilty after a trial, the United States Attorney would had to have proved beyond a reasonable doubt that on or about August 24 of 2011, you intentionally transferred a mixture or substance containing a detectable amount of

methamphetamine to another person; when you did that, you knew that what you were transferring was in fact a mixture or substance containing a detectable amount of methamphetamine; and the amount of the substance or mixture containing the meth was more than 350 grams but less than 500 grams. Do you understand that?

OSORNO-HERNANDEZ: Yes, Your Honor.

JUDGE: If you don't believe the United States Attorney could prove all those things beyond a reasonable doubt, you should not plead guilty today. Do you understand that?

OSORNO-HERNANDEZ: Uh-huh, yes.

[Id. at pp. 8-9, 15-16].

Because I gave Osorno-Hernandez the information he claims not to have received from his counsel in Ground 2, no prejudice could have resulted. Ground 2 will therefore be denied.

As for Ground 3, Osorno-Hernandez claimed he was misled by defense counsel into believing he would receive a downward departure. Taken as true, this claim would not establish ineffective assistance on the part of defense counsel. United States v. Quiroga, 554 F.3d 1155–56 (8th Cir. 2009) ("Inaccurate advice about a likely sentence does not render a defendant's decision to plead guilty involuntary, so long as the defendant is informed of the statutory minimum and maximum, and the court's ability to sentence in that range."). I never mentioned a departure at the change of plea hearing, at which Osorno-Hernandez agreed to accept any sentence in the recommended range. I explained what the Guidelines range would be, that it was in my discretion to determine the ultimate sentence based on that range, and that he could receive the maximum sentence. I furthermore explained to him that receiving a sentence within the range that was dissatisfactory to him was not grounds for appeal. Osorno-Hernandez acknowledged everything I told him with respect to his potential sentence. The aforementioned dialogue

transpired as follows:

> JUDGE: Now, beginning on page 5 is a discussion about how it is proposed the guidelines work in your case. It's recommended that your base offense level is a 30. Do you understand that?
>
> OSORNO-HERNANDEZ: Yes.
>
> JUDGE: That's because you're admitting today that you are responsible for a quantity of methamphetamine that is more than 350 but less than 500 grams. Do you understand that, sir?
>
> OSORNO-HERNANDEZ: Yes.
>
> JUDGE: It's possible that you satisfy the provisions of the safety valve. The safety valve has two benefits. One is it gives a two-level reduction in your offense level and allows the Court to go below any mandatory minimum sentences that may apply to you. Do you understand that?
>
> OSORNO-HERNANDEZ: Yes.
>
> JUDGE: It's agreed that you've met three of the five criteria for the safety valve. Is that right, Mr. Delworth?
>
> MR. DELWORTH: Yes, Your Honor.
>
> JUDGE: The other two are that you have to tell the U.S. Attorney everything you know about what you did in this case, and you can't have more than one criminal history point. Do you understand that?
>
> OSORNO-HERNANDEZ: Yes.
>
> JUDGE: That's something we'll determine at the time of sentencing whether you meet all five criteria. Do you understand that?

OSORNO-HERNANDEZ: Yes, Your Honor.

JUDGE: It's recommended up to three levels be subtracted for your acceptance of responsibility in a timely fashion. Do you understand that?

OSORNO-HERNANDEZ: Yes, sir.

JUDGE: As a result, it's recommended your final total offense level will be a 27 or, if you satisfy the safety valve, it will be a 25.

OSORNO-HERNANDEZ: Yes, sir.

. . .

JUDGE: You understand that the term of imprisonment for the charge to which you're pleading guilty is a term of not less than five years and not more than 40?

OSORNO-HERNANDEZ: Yes, Your Honor.

JUDGE: And there's a maximum fine of $5 million?

OSORNO-HERNANDEZ: Yes, Your Honor.

JUDGE: That you could be sentenced to the maximum term of imprisonment or assessed the maximum fine or both?

OSORNO-HERNANDEZ: Yes, Your Honor.

JUDGE: And that in addition to any term of imprisonment that may be imposed, a period of supervised release of not less than four years and not more than the rest of your life will also be imposed?

OSORNO-HERNANDEZ: Yes, Your Honor.

. . .

JUDGE: You understand that by pleading guilty you are subjecting yourself to the maximum penalties we just discussed?

> OSORNO-HERNANDEZ: Yes, Your Honor.
>
> JUDGE: Now, at the time of sentencing, your attorney and the United States Attorney may make recommendations to me about what your sentence should be, but you understand I'm not required to follow their recommendation?
>
> OSORNO-HERNANDEZ: Yes, Your Honor.

[Id. at pp. 14-15, 19-21].

The lack of cause for a departure was also indicated on the PSR. Osorno-Hernandez did not dispute this finding at any point despite his having the opportunity to address the matter at his sentencing hearing prior to receiving his sentence. Osorno-Hernandez also admitted he was not promised anything by anyone in order to accept the plea agreement at the change of plea hearing, which directly contradicts his claim that his attorney promised him a departure.

> JUDGE: Does this agreement contain all the promises made to you by the U.S. Attorney?
>
> OSORNO-HERNANDEZ: Yes, Your Honor.
>
> JUDGE: Did they promise you anything they didn't put in writing?
>
> OSORNO-HERNANDEZ: No.
>
> JUDGE: Has anybody else offered you anything or given you anything to get you to plead guilty today?
>
> OSORNO-HERNANDEZ: No.

[Id. at pp. 16].

Because Osorno-Hernandez cannot show that he was prejudiced by the inaccurate advice he allegedly received from defense counsel, and the record contradicts his allegation that he received the advice in the first place, Ground 3 will be denied.

With respect to Ground 4, Osorno-Hernandez claims his defense counsel failed to file an

12

appeal when he instructed him "in the filing and in the preparation of a notice of appeal and for and [*sic*] appeal challenging the plea, the conviction and the sentence imposed[.]" The United States Court of Appeals for the Eighth Circuit has determined that "a single, self-serving, self-contradicting statement is insufficient to render the motion, files, and records of the case inconclusive on the question of whether [a defendant] instructed his counsel to appeal." Holloway v. United States, 960 F.2d 1348, 1358 (8th Cir. 1992).

Nothing in the record indicates that Osorno-Hernandez instructed defense counsel to file an appeal. Osorno-Hernandez pled guilty in open court subject to the penalties of perjury and acknowledged his willingness to accept the sentence imposed so long as it fell within the guidelines range of which he was notified. Osorno-Hernandez also indicated his knowledge and acceptance of his sentence prior to its imposition when he noted "the term that I'll be incarcerated is five years." United States v. Osorno-Hernandez, 4:11 CR 425 RWS [Doc. # 53, Sent. Tr., pp. 4]. Furthermore, defense counsel affirmed in an affidavit that Osorno-Hernandez never contacted him to request an appeal, which is further supported by the notion that any appeal on Osorno-Hernandez's behalf would have lacked merit or previously been waived. [Doc # 14-1, Affidavit, pp. 3]. Because Osorno-Hernandez's claim is not corroborated by anything in the record and is contradicted by the foregoing facts, Ground 4 will be denied.

      B.      *An Evidentiary Hearing is Not Warranted*

"A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and records of the case conclusively show that he is entitled to no relief." Anjulo-Lopez v. United States, 541 F.3d 814, 817 (8th Cir. 2008) (internal quotation marks omitted). "No hearing is required, however, where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." Id. (internal quotation

13

marks omitted). Because the records conclusively show that Osorno-Hernandez is not entitled to relief as a matter of law, I will not hold an evidentiary hearing in this matter.

*C.     Certificate of Appealability*

As Osorno-Hernandez has not made a substantial showing of the denial of a federal constitutional right, this Court will not issue a certificate of appealability. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997) (citing Flieger v. Delo, 16 F.3d 878, 882-8 (8th Cir. 1994)) (substantial showing must be debatable among reasonable jurists, reasonably subject to a different outcome on appeal, or otherwise deserving of further proceedings).

Accordingly,

**IT IS HEREBY ORDERED** that the motion of Aaron Osorno-Hernandez to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 is **DENIED**.

**IT IS FURTHER ORDERED** that this Court will not issue a certificate of appealability, as Osorno-Hernandez has not made a substantial showing of the denial of a federal constitutional right.

**IT IS FURTHER ORDERED** that this Court will not hold an evidentiary hearing on this matter because the records conclusively show that Osorno-Hernandez is not entitled to relief.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 16th day of April, 2014.